UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:07CV614

DAVID E. LINNIG                                                                         PLAINTIFF

VS.

MICHAEL J. ASTRUE,
      Commissioner of Social Security                                     DEFENDANT

## MEMORANDUM OPINION

Before the Court is the complaint of David Linnig ("Plaintiff" or "Claimant") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. Section 405(g). After examining the administrative record ("Tr."), the arguments of the parties, and the applicable authorities, the Court is of the opinion that the decision of the defendant Commissioner should be affirmed.

## PROCEDURAL HISTORY

On August 24, 2005, Claimant filed application for disability insurance benefits, alleging that he became disabled as of November 10, 2000. After a hearing, Administrative Law Judge Michael Nichols ("ALJ") determined that claimant's degenerative disc disease and dupuytren's contractures were severe impairments that prevented him from performing his past relevant work as a bartender and a bar manager. The ALJ further found that Mr. Linnig retained the residual functional capacity for a significant range of sedentary work, jobs that exist in significant numbers in the state and national economies. This became the final decision of the Defendant when the Appeals Council denied review on October 2, 2007.

## STANDARD OF REVIEW

The task of this Court on appellate review is to determine whether the administrative proceedings were flawed by any error of law, and to determine whether substantial evidence supports the factual determinations of the ALJ. Elam v. Commissioner, 348 F.3d 124 (6th Cir. 2003). "Substantial evidence" exists if there is sufficient evidence from which reasonable minds could arrive at the challenged conclusion. NLRB v. Columbian Enameling and Stamping Co., 306 U.S. 292 (1939); Foster v. Bowen, 853 F.2d 483 (6th Cir. 1988). If the proceedings are without reversible error and if substantial evidence exists to support the challenged conclusions, this Court must affirm, regardless of whether the undersigned would have found the facts differently.

## ARGUMENTS ON THIS APPEAL

The parties agree that Mr. Linnig's insured status expired at the end of 2005. The ALJ noted Dr. Cecil's July 2007 statement that plaintiff had suffered from a liver disorder for many years and that it had been disabling since December of 2005. Tr. 352. However, the ALJ found that this assertion was not supported by the medical evidence, and held that the liver disorder was asymptomatic until July of 2006, when he began to make complaints and his physician ordered additional laboratory studies. Tr. 19. Plaintiff contends that in making his determinations, the ALJ erred, failing to apply the correct standards regarding "relation back." Citing SSR 83-20p, which requires that the fact-finder consider the applicant's allegations "and the medical and other evidence concerning impairment severity," plaintiff argues that the severity of the impairment six months after the date last insured, necessarily implies the existence of a severe impairment as of the date last insured.

Significantly, plaintiff did not have a treatment history with Dr. Cecil during the pre-2006 period. In additional, defendant points to the physical exam conducted in mid-January 2006, two

2

weeks after the date last insured. The consultant recorded Mr. Linnig's complaints of pain in his neck, low back, feet and hands. However, not only did he not complain of abdominal pain or gastrointestinal problems, but the physical exam findings regarding the abdomen were listed as "soft and nontender." Tr. 206. A few months thereafter, plaintiff began experiencing symptoms, and an ultrasound performed in mid September of 2006 found nodules that could represent "early cirrhosis." Tr. 311. In October of 2006, Dr. Jennings perceived a firm liver and an enlarged spleen, and agreed that the ultrasound and laboratory studies suggested cirrhosis. Tr. 306.

The record shows elevated liver enzymes as early as December of 2001, and this was noted by the ALJ, who stated he was "well aware that the claimant's hepatitis C may have been present for a number of years, but during the time prior to July 2006 it was asymptomatic." Tr. 21. The salient question is whether the liver disorder caused any functional limitation. That is, whether cirrhosis was silently beginning in December of 2005 is irrelevant; the question is when the liver disorder began to interfere with claimant's ability to do work-related tasks. While plaintiff had a history of hepatitis and while the record reflects symptomatic liver disease nine to ten months after the expiration of insured status, Mr. Linnig is not able to point to any course of treatment, request for medical attention, or other medical evidence to support his claim that his liver disorder was symptomatic prior to January of 2006. The Court finds no error in the ALJ's analysis, and concludes that substantial evidence supports the ALJ's finding that the liver disorder was not a severe impairment prior to the expiration of Mr. Linnig's fully insured status.

Next, plaintiff contends that the ALJ erred in making his assessment of residual functional capacity. Residual functional capacity (RFC) is an assessment of the claimant's remaining capacity for work once his limitations have been taken into account, Howard v. Commissioner, 276 F.3d 235,

3

239 (6th Cir. 2002); 20 C.F.R. §404.1545(a)(1). Residual functional capacity is what a claimant can still do on a sustained, regular, and continuing basis, Cohen v. Secretary of HHS, 964 F.2d 524 (1992). A claimant bears the burden or proof in establishing his RFC, Her v. Commissioner, 203 F.3d 388, 391-392 (6th Cir. 1999).

The ALJ found that Mr. Linnig retained the capacity for sedentary work which provides the opportunity to stand briefly at his workplace every 30 to 45 minutes as needed, and which does not require repetitive use of his hands. In addition, the jobs are limited to low stress in nature. Tr. 371-372. Plaintiff points to the examining consultant's January 2006 observation that difficulties with finger manipulation would increase with progression of his condition, such that "it is conceivable that he would have markedly diminished ability to extend the fingers of either hand." Tr. 207. However, the relevant question is not whether the condition might worsen to the point of being disabling, but rather whether it was disabling prior to January 2006.

Plaintiff also contends that substantial evidence fails to support the ALJ's conclusion that spinal pain would not prevent performance of sedentary work with the additional restrictions noted. Mr. Linnig notes that his treating neurosurgeon, Dr. Nazar, recorded on his initial examination on December 16, 2005, that "the patient has a decreased range of motion with neck and low back movement" (Tr. 214), but Mr. Linnig does not indicate how this is inconsistent with the restrictions included in the ALJ's RFC determination.

Plaintiff contends that his complaints concerning back pain should have been treated as fully credible, particularly in view of the MRI results indicating "paracentral and foraminal protrusion moderate in size C6-7, results in effacement of the thecal sac and distortion of the cord contour." Tr. 212. While plaintiff argues that "it stands to reason" that this would result in serious pain, the

treatment records and opinions of Dr. Nazar indicate otherwise.  The ALJ noted that after personally reviewing the MRI study, the neurosurgeon recorded on January 17, 2006,  "a small disc protrusion/spur formation ... which indents slightly the thecal sac but does not significantly displace or compress his spinal cord.  The neural foramina also appears to be open." Tr. 211, 214.  Dr. Nazar did not recommend surgical intervention.  He suggested cervical epidural injection, but Mr. Linnig said he would have to give that additional thought before considering it. *Id.*  On February 14, 2006, Dr. Nazar recorded that he did not believe there was a role for surgical intervention, opined that diagnosis "is most consistent with a cervical strain/sprain," and  recommended "continue with conservative management strategies involving postural restrictions and modifications."  Tr. 210.

In addition to treatment history and office notes, the ALJ noted despite plaintiff's complaints of severe and disabling pain, Mr. Linnig repeatedly told physicians that he was working as a restaurant manager.  For example, in July of 2004, he reported to Dr. Davis (the pain clinic) that he was working as the bar manager at Mike Linnig's restaurant.  Tr. 244.  The records also reflect that Mr. Linnig does not have difficulty with side effects from his medications and that he works full time. Tr. 222.  In September of 2005, he told Dr. Davis his pain level was 7 to 8 (out of 10), but he also told him that he was still working full time, and was "working hard."  Tr. 226.  In November of 2005, he reported that his back was doing better, and "the restaurant is closed for the winter."  Tr. 224.  In striking contrast to these repeated reports of full time work exceeding the "sedentary" level in the ALJ's RFC, Mr. Linnig told the consultant examiner (January 2006) that he had been unemployed for six years.  Tr. 205.  Such conflicting reports are certainly relevant to a fact-finder's credibility analysis.

An "ALJ may distrust a claimant's allegations of disabling symptomatology if the subjective

5

allegations, the ALJ's personal observations, and the objective medical evidence contradict each other." Moon v. Sullivan, 923 F.2d 1175, 1183 (6th Cir. 1990). Stated another way, "discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." Walters v. Commissioner, 127 F.3d 525, 532 (6th Cir. 1997). The Court perceives no error in the ALJ's evaluation of the credibility of Mr. Linnig's testimony regarding his pain, and concludes that substantial evidence supports the ALJ's RFC determination.

Finally, plaintiff contends that the ALJ erred in failing to consider any restrictions arising from depression. Mr. Linnig appears to concede that there is no evidence suggesting that depression represents a severe impairment, but argues that even non-severe impairments can aggravate severe impairments. While plaintiff's statement of the law is accurate, he fails to explain how he believes it is significant in this case. Plaintiff is unable to point to any evidence indicating that his depression would impose any functional limitations inconsistent with the RFC found by the ALJ.

As there is no legal error and substantial evidence supports the decision of the ALJ, the Court is required to affirm the Commissioner's determination. An order in conformity has this day entered.